Brian K. Condon (BC 4603)
CONDON RESNICK, LLP
19 Squadron Boulevard
New York, New York 10956
(845) 634-8200 Telephone
(845) 634-8201 Facsimile

*Attorneys for Plaintiff, Christine Citro LoGuidice*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
CHRISTINE CITRO LoGUIDICE,                              Civil Action No.

                          Plaintiff,
                                                           **VERIFIED COMPLAINT**
   -against-

EQUANT INC.,                                            **PLAINTIFF DEMANDS A**
                                                                      **TRIAL BY JURY**
                        Defendant.
----------------------------------------------------------------------X

       The Plaintiff, CHRISTINE CITRO LoGUIDICE, by her attorneys CONDON RESNICK, LLP. as and for her complaint herein alleges the following upon information and belief:

**PRELIMINARY STATEMENT**

       1.     This is an action by Plaintiff alleging discrimination on the basis of gender. Plaintiff Christine Citro LoGuidice contends that the Defendant Equant Inc. through its employees made business decisions based solely on gender. As a result, the Plaintiff, Christine Citro LoGuidice, suffered loss of employment opportunities and benefits set forth herein, along with emotional distress and humiliation. Plaintiff also maintains pendent state claims for sex discrimination under the Executive Law of the State of New York and breach of contract.

**JURISDICTIONAL STATEMENT**

2. This Court has jurisdiction over the Plaintiff's claims against Defendant for discriminatory conduct on the basis of gender in violation of Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the Pregnancy Discrimination Act , 42 U.S.C. § 2000e(k) as amended and 28 U.S.C. §1331, as well as pendent jurisdiction over Plaintiff's claims based on such conduct as a violation of, inter alia, the New York State Human Rights Law, the New York City Human Rights Law, and breach of contract under 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Plaintiff has complied fully with any and all prerequisites to jurisdiction in this Court under Title VII, the State Human Rights Law, and the City Human Rights Law.

4. Contemporaneously with the filing of this Complaint, Plaintiff has mailed a copy of this Complaint, along with a letter of explanation, to the New York City Commission of Human Rights and the Office of the Corporation Counsel of the City of New York, satisfying the notice requirements of Section 8-502(c) of the New York City Administrative Code.

**PARTIES**

5.      Plaintiff, Christine Citro LoGuidice, is a female residing at Garden City, New York.

6.      Upon information and belief, Equant Inc. (hereinafter referred to as "Equant") is a French based corporation incorporated in the State of Delaware who is authorized to do in New York, as is doing business in the State of New York, with its principal place of business located at 3 Park Avenue, 25th Floor, New York, New York 10016.

## STATEMENT OF CLAIMS

**A.    EQUANT'S REFUSAL TO PAY PLAINTIFF EARNED SALES COMMISSION WAS BASED ON HER BEING A WOMAN**

7.      In or about May, 1999 Plaintiff, Christine Citro LoGuidice, was hired by Defendant Equant as a salesperson whose compensation was base salary plus commission on sales.

8.      Plaintiff Christine Citro LoGuidice was in all respects qualified to do her job and has worked at Equant since May 1999.

9.      At all times hereinafter mentioned, the Plaintiff Christine Citro LoGuidice carried out her responsibilities in the Defendant's employ in a professional manner which was profitable for the Defendant as the Plaintiff was and still is one of the Defendant's top salespeople.

10.     During the period of time that Plaintiff was employed by Defendant Equant she developed experience and expertise in her field and enjoyed an excellent reputation in her field as well as with her customers.

11.     In or about February, 2004, Plaintiff sold two CISCO SMARTnet

Telecommunication Maintenance Agreements as follows: (1) a three (3) year $7,069,942 contract to Pershing LLC and (2) a three (3) year $5,769,240 contract to Bank of New York

12. Based on the Defendant's own sales compensation plan, the Plaintiff was due a commission of in excess of $540,000.00 for the sale of these two three (3) year Maintenance Agreements.

13. Equant has denied the Plaintiff payment of her earned commission of $540,000.00 and has offered Plaintiff one-sixth of her earned commission.

14. Upon information and belief, a French male salesperson employed by Equant was in a similar situation and was denied payment of his earned sales commission by Equant.

15. However, upon information and belief, the Plaintiff's male counterpart was ultimately paid approximately 80% of the earned commission which was due him.

16. Throughout her employment with Equant, Plaintiff was told that certain lucrative house accounts were given to male employees because they "had a family to feed".

17. Furthermore, throughout her employment, Plaintiff was told that Equant had a "glass ceiling" when it came to the promotion of women and that "women at Equant did not get promoted".

B. **EQUANT ENCOURAGED MALE SALESPEOPLE TO TAKE IMPORTANT CLIENTS TO STRIP CLUBS WHILE FEMALE SALESPEOPLE WERE NOT**

18. Equant salespeople were encouraged to take clients and/or potential clients out on the town in an attempt to foster good relationships and to try to increase sales.

19. It was well known that Equant's male salespeople would take their existing clientele to topless gentlemen's clubs - one of which was SCORES which is located on the Upper East Side of Manhattan.

20. This type of entertaining was tolerated and, upon information and belief, even encouraged by the Defendant.

21. The Plaintiff felt uncomfortable taking her important male clients to SCORES but would take them to other less offensive establishments in and around New York City.

22. The Plaintiff feels that Equant's male salespersons are given an advantage in trying to close deals because they are permitted to entertain clients at establishments which would have made the Plaintiff and her clients uncomfortable if she attended.

C. **DEFENDANT SPONSORED EVENTS WHICH PURPOSEFULLY EXCLUDED WOMEN**

23. On or about July 22, 2004, the Defendant held a golf outing and dinner for the benefit of its customers at the exclusive Balthusrol Golf Club in New Jersey.

24. The golf outing is used by Equant to build camaraderie between Equant's salespeople and their respective clients to foster a better business relationship between the client and Equant.

25. Upon information and belief, Equant, recognizing the importance of these events, has spent and currently spends thousands of dollars annually to fund these outings.

26. Plaintiff and other women were repeatedly excluded from attending these events.

27.     Despite the fact that three (3) of the Plaintiff's most important clients were invited and attended the golf outing at Balthusrol, no female Equant employees, including the Plaintiff, were invited to participate in the July 2004 golf outing.

28.     This year, unlike last year, women were permitted to attend the dinner after the golf outing.

29.     Prior to last year, Equant's female employees were invited to attend the golf outing and dinner.  In 2002, the Plaintiff actually participated in the Equant's golf outing with her clients.

30.     At this year's dinner, one of the Plaintiff's client noted several times that there were no women who attended the golfing event.

D.    **DEFENDANT IS DISCRIMINATING AGAINST PLAINTIFF BECAUSE OF HER PREGNANCY**

31.     At the end of July, 2004, the Plaintiff announced to the Defendant and to her colleagues that she was pregnant.

32.     On or about August 2, 2004, the Plaintiff had a telephone call with Mack Treece, Equant's President of North American Sales and Sean Connolly, Vice President of Equant's Northeast Sales region regarding payment of her earned commission.

33.     During this August 2nd telephone conversation, Mr. Treece told the Plaintiff that now many companies, including IBM, were not offering their sales people commission for the SMARTnet contracts.

34.     On August 20, 2004, the Plaintiff met with Sean Connolly to discuss the insufficient $90,000 offer of commission which was proposed by Equant.

35.     At that meeting, the Plaintiff challenged Mr. Treece's comments about IBM's

non-payment of commission.

36. Mr. Connolly remarked that IBM must value that employee and wanted to align itself with that individual, as a high producer, by providing commission payment.

37. The Plaintiff is one of the highest producing salespeople for the Defendant. Therefore, the only reason why she was not a "valued employee" was due to the fact that she was pregnant and, as such, her future at Equant was unclear.

38. The Plaintiff believes that she has lost considerable money as a result of the company's manipulation of her sales numbers and discriminatory practices against women, and in particular, pregnant women.

39. In or about December, 2004 the Plaintiff filed a charge of discrimination against the Defendant with the Equal Employment Opportunity Commission.

40. On June 24, 2005, the EEOC issued a Notice of Right to Sue to the Plaintiff.

## COUNT I
### (Violation of Title VII - Disparate Treatment)

41. Plaintiff realleges Paragraph "1" through "40" of this Complaint as if they were fully set forth herein.

42. Title VII declares that "[i]t shall be an unlawful employment practice for an employer. . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex" 42 USC § 2000e2.

43. The Defendant violated the foregoing provision of the Civil Rights Act when it discriminated against the Plaintiff on the basis of her sex by treating her differently than her male counterparts.

44. Plaintiff is a top sales performer for Defendant, but has been treated differently with adverse employment action just because she is a woman.

45. The Defendant wrongfully, wantonly, recklessly, maliciously and intentionally discriminated against the Plaintiff on the basis of her sex and through its management employees when it refused to pay the Plaintiff her commission and failed to offer her the same conditions and privileges of employment as was afforded to her male counterparts.

46. Upon information and belief, as a direct and proximate result of the Defendant's wrongful, reckless, malicious and intentional discriminatory practice, the Plaintiff has lost promotional opportunities and bonuses.

47. As a direct and proximate result of the Defendant's wrongful, reckless, malicious and intentional discriminatory practice, the Plaintiff has been forced to endure, and continues to endure, great emotional distress, suffers loss of morale, low confidence and self-esteem, depression, as well as suffers humiliation, and nervousness.

48. As a direct and proximate result of the Defendant's wrongful, reckless, malicious and intentional discriminatory practices, the Plaintiff is entitled to an award of compensatory damages.

49. As a direct and proximate result of the Defendant's wrongful, reckless, malicious and intentional discriminatory practices, the Plaintiff has been damaged in an amount not yet determined but in no event less than $540,000.00.

## COUNT II
### (Violation of Title VII - Disparate Impact)

50. Plaintiff realleges Paragraph "1" through "49" of this Complaint as if they were fully set forth herein.

51. Title VII declares that "[i]t shall be an unlawful employment practice for an employer. . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex" 42 USC §2000e2.

52. The Defendant violated the foregoing provision of the Civil Rights Act when it discriminated against the Plaintiff on the basis of her sex by adopting policies that have a disparate impact on women.

53. Defendant's unwritten policy and practice of subsidizing topless gentlemen clubs and its annual golf outings and dinners to establish good will and further develop its relationship with its clients are utilized in a discriminatory manner to purposefully exclude women.

54. Defendant finances these practices and knows or should know that women in the firm will feel uncomfortable in attending such events.

55. Plaintiff has never taken her clients to any topless gentlemen's club and, upon information and belief, neither have any other female employees.

56. Defendant's most recent golf outing did not include its female employees, despite the fact that they make up approximately 30% of the work force, with Plaintiff as a top sales performer.

57. Upon information and belief, as a direct and proximate result of Defendant's practices and policies which have a disparate impact on women, the Plaintiff has lost

promotional opportunities and bonuses.

58. As a direct and proximate result of Defendant's practices and policies which have a disparate impact on women, the Plaintiff has been forced to endure, and continues to endure, great emotional distress, suffers loss of morale, low confidence and self-esteem, depression, as well as suffers humiliation, and nervousness.

59. As a direct and proximate result of Defendant's practices and policies which have a disparate impact on women, the Plaintiff is entitled to an award of compensatory damages.

60. As a direct and proximate result of Defendant's practices and policies which have a disparate impact on women, the Plaintiff has been damaged in an amount not yet determined but in no event less than $540,000.00.

## COUNT III
### (Violation of Title VII - Pregnancy Discrimination Act)

61. Plaintiff realleges Paragraph "1" through "60" of this Complaint as if they were fully set forth herein.

62. The Pregnancy Discrimination Act states that "women affected by pregnancy . . . shall be treated the same . . . as other persons not so affected but similar in their ability or inability to work."  42 U.S.C. § 2000e(k).

63. The Defendant violated the foregoing provision of the Pregnancy Discrimination Act when it discriminated against the Plaintiff on the basis of her sex because she was pregnant.

64. Plaintiff has been consistently reminded by Defendant both verbally and in practice that women are treated differently than men in their employment with Defendant.

65. Plaintiff has been told male employees received more lucrative accounts because they "had a family to feed" and that female employees are not promoted because "women at

Equant did not get promoted".

66. Management has told Plaintiff that commissions are given to employees who are valued.

67. Plaintiff has consistently been denied her earned $540,000.00 commission and offered a mere $90,000.00 substitution instead.

68. The Defendant wrongfully, wantonly, recklessly, maliciously and intentionally discriminated against the Plaintiff on the basis of her sex because she was pregnant and through its management employees when it refused to pay the Plaintiff her commission and failed to offer her the same conditions and privileges of employment as was afforded to her male counterparts.

69. Upon information and belief, as a direct and proximate result of the Defendant's wrongful, reckless, malicious and intentional discriminatory practice, the Plaintiff has lost promotional opportunities and bonuses.

70. As a direct and proximate result of the Defendant's wrongful, reckless, malicious and intentional discriminatory practice, the Plaintiff has been forced to endure, and continues to endure, great emotional distress, suffers loss of morale, low confidence and self-esteem, depression, as well as suffers humiliation, and nervousness.

71. As a direct and proximate result of the Defendant's wrongful, reckless, malicious and intentional discriminatory practices, the Plaintiff is entitled to an award of compensatory damages.

72. As a direct and proximate result of the Defendant's wrongful, reckless, malicious and intentional discriminatory practices, the Plaintiff has been damaged in an amount not yet determined but in no event less than $540,000.00.

## COUNT IV
**(Violation of the New York State Human Rights Law - Gender Discrimination)**

73. Plaintiff realleges Paragraph "1" through "72" of this Complaint as if they were fully set forth herein.

74. Section 296(1)(a) of the New York State Human Rights Law declares that "[i]t shall be an unlawful discriminatory practice: (a) For an employer . . . because of the sex. . .of any individual . . . to discriminate against such individual in compensation or terms, conditions or privileges of employment."

75. Defendant violated the foregoing provision of the New York State Human Rights Law when Defendant subjected the Plaintiff to a hostile work environment because of her gender as she was precluded from participating in the client outings in the same manner as her male counterparts.

76. As a direct and proximate result of Defendant's wrongful, reckless and intentional discriminatory practices, the Plaintiff has been deprived of recognition for her work and bonuses to which she would have been entitled; has been forced to endure, and continues to endure, great emotional distress, suffer loss of morale, confidence and self esteem, as well as suffer humiliation and nervousness.

77. As a direct and proximate result of Defendant's wrongful, reckless and intentional discriminatory practices, the Plaintiff has been damaged in an amount which cannot be accurately determined at this time but in no event will be less than $1,000,000.00.

## COUNT V
**(Violation of the New York City Human Rights Law - Gender Discrimination)**

78. Plaintiff realleges Paragraph "1" through "77" of this Complaint as if they were fully set forth herein.

79. Section 8-107(a) prohibits employment discrimination based on gender including in "compensation or in terms, conditions or privileges of employment."

80. Defendant violated the foregoing provision of the New York City Human Rights Law when Defendant subjected the Plaintiff to a hostile work environment because of her gender as she was precluded from participating in the client outings in the same manner as her male counterparts.

81. As a direct and proximate result of Defendant's wrongful, reckless and intentional discriminatory practices, the Plaintiff has been deprived of recognition for her work and bonuses to which she would have been entitled; has been forced to endure, and continues to endure, great emotional distress, suffer loss of morale, confidence and self esteem, as well as suffer humiliation and nervousness.

82. As a direct and proximate result of Defendant's wrongful, reckless and intentional discriminatory practices, the Plaintiff has been damaged in an amount which cannot be accurately determined at this time but in no event will be less than $1,000,000.00.

## COUNT VI
### (Breach of Contract)

83. Plaintiff realleges Paragraph "1" through "82" of this Complaint as if they were fully set forth herein.

84. Plaintiff's compensation for her employment with Defendant consists of a base salary plus commissions on sales.

85. Throughout her tenure with Defendant, Plaintiff has been one of the top salespeople.

86. Plaintiff's work in selling two CISCO SMARTnet Telecommunication Maintenance Agreements (one 3 year $7,069,942 contract and one 3 year $5,769,240 contract) earns her a commission in excess of $540,000.00.

87. Defendant, without any fault on the part of Plaintiff, refused to pay to the Plaintiff the sales commission due pursuant to the hiring agreement.

88. Plaintiff has duly performed all of the conditions on her part to be performed.

89. Therefore, the amount due to the Plaintiff as a result of said breach is a sum to be determined at trial, but in no event less than $540,000.00.

## COUNT VII

**(Unjust Enrichment)**

90. Plaintiff realleges Paragraph "1" through "90" of this Complaint as if they were fully set forth herein.

91. Plaintiff's sale of the two CISCO SMARTnet accounts has benefitted Defendant economically and enhanced its client profile.

92. Defendant has not paid Plaintiff her sales commission for the two accounts, but reaps the benefit from Plaintiff's work.

93. Defendant has therefore been unjustly enriched.

94. As a result of the Defendant's refusal to pay Plaintiff her earned commission, the Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $540,000.00.

WHEREFORE, the Plaintiff respectfully requests that the Court render a judgment against the Defendant as follows:

(1) An order that Defendant pay Plaintiff her earned commission to the same extent that she would have received but for Defendant's unlawful conduct;

(2) An order prohibiting Defendant from continuing or maintaining the policy, practice and/or custom of denying sales commissions to employees on the basis of gender;

(3) An order directing Defendant to pay Plaintiff compensatory damages for injury to her reputation, for adverse effects on her career, and for diminished earning capacity resulting from the discriminatory and retaliatory actions of Defendant.;

(4) An order directing Defendant to pay Plaintiff a portion of its profits during the

relevant period as punitive damages to punish and deter continuation of Defendant's unlawful employment practices;

(5) With respect to the first, second, and third counts, a sum which cannot be accurately be determined at this time but in no event less than $540,000.00;

(6) With respect to the fourth count, a sum which cannot be accurately determined at this time but in no event less than $1,000,000.00;

(7) With respect to the fifth count, a sum which cannot be accurately determined at this time but in no event less than $1,000,000.00, a declaration that Defendant's actions were in violation of the New York City Human Rights Law, and an award to Plaintiff of punitive damages;

(8) With respect to the sixth and seventh counts, a sum which cannot be accurately be determined at this time but in no event less than $540,000.00;

(9) An award to Plaintiff of the costs of this action, together with her reasonable attorneys' fees; and

(10) Such other and further relief as this Court may deem just and proper.

Dated: New City, New York
       August 18, 2005

                              Yours, etc.

                              CONDON RESNICK, LLP

                              By:_____
                                  Brian K. Condon (BKC 4683)
                              19 Squadron Boulevard
                              New City, New York 10956
                              (845) 634-8200
                              Attorney for Plaintiff, Christine Citro LoGuidice